

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00147-CR

ANDREW STEPHEN PEREZ                                           APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In three issues, Appellant Andrew Stephen Perez appeals his conviction for assault of a public servant. We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

After a late-night altercation with three officers from the police station that abutted his back yard, Perez was charged with three counts of assault on a public servant. During trial, he requested an instruction on self-defense, which the trial court denied. A jury found Perez not guilty of assaulting Officers Brian Lord and David Chaney but guilty of assaulting Officer Lauren Fimbres, by

> intentionally or knowingly caus[ing] bodily injury to L. Fimbres, a public servant, . . . by striking, grabbing or pulling L. Fimbres with his hand, or by placing a choke hold on L. Fimbres with his arm while L. Fimbres was lawfully discharging an official duty and [Perez] knew that L. Fimbres was a public servant.

The jury assessed punishment at two years' confinement and a $7,500 fine and recommended that Perez be placed on community supervision and that the fine be suspended. The trial court sentenced Perez accordingly, placing Perez on community supervision for two years. This appeal followed.

## III. Self-Defense

In his first issue, Perez argues that the trial court erred by denying his request for a jury instruction on self-defense. The State responds that Perez was not entitled to a self-defense instruction because self-defense is a confession and avoidance defense requiring Perez to first admit to the indicted charge, which the State contends he did not do.

Penal code section 9.31 states in pertinent part:

(b) The use of force against another is not justified:

   . . . .

2

(2) to resist an arrest or search that the actor knows is being made by a peace officer . . . even though the arrest or search is unlawful, unless the resistance is justified under Subsection (c)[.]

. . . .

(c)  The use of force to resist an arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer . . . uses or attempts to use greater force than necessary to make the arrest or search; and

(2)  when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's . . . use or attempted use of greater force than necessary.

Tex. Penal Code Ann. § 9.31(b)(2), (c) (West 2011). "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007), *cert denied*, 553 U.S. 1059 (2008). "[A] defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offence *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Id.* at 659.

Assuming without deciding that the confession and avoidance doctrine applies here, we must determine whether Perez "confessed" to the assault allegation against Officer Fimbres so that he could seek to "avoid" the consequences thereof through statutory self-defense.

3

Perez testified as follows:

> Q. [Defense counsel] Did Officer Fimbres strike you at one point?
>
> A. Five times.
>
> Q. What—how did she do that?
>
> A. With the—with the fist to the face with gloves on.
>
> Q. How did she get to—how did she get her fist to your face?
>
> A. While Officer Lord had my back and Officer Chaney had my—one of my arms and Lord also had my—my left arm from the back, like in—he was holding it back with his arm. Fimbres released her—her hold on my legs and she got in an elevated position and—and I—I—with hate on her face, like absolute rage that you—you see on—you see on people, like a—in scary movies.
>
> Q. What did she do?

After Perez testified that Officer Fimbres hit him in the eye, Perez gave the following testimony:

> Q. Okay. Did you do anything to stop her?
>
> A. Yeah. I—I guess after being hit so many times, I—I was starting to—to—to come back into my body and—and I managed to get an arm free, and knowing how close and dangerous it was for her to hit me on this side of my head.
>
> Q. What did you do?
>
> A. I—I reached up and I—*I tried to bring her into my chest* to—to stop the pounding.
>
> Q. And what—how does the bringing her down to your chest stop the pounding?
>
> A. Well, I mean, if her chest is close to my chest, she can't get that—that momentum going to—to hit—to hit me like a hammer.

4

Q. Were you doing that to keep—to keep her or to hurt her—to keep her from hurting you or—

A. Oh, I thought that I was—I thought that I—If I hadn't already died, that I was dying.

Q. Did you pull her hair while you were doing that?

A. It could have gotten—if her hair was pulled, it wasn't an in—an intentional pull. *It was the—the act of embracing her and bringing her to me.*

[Emphasis added.] Perez then testified that he lost consciousness.

During cross-examination, Perez gave the following testimony:

Q. Okay. So basically you were just lying there and let them do what they wanted to you?

A. Yes.

Q. Okay. So you never resisted?

A. (Witness shakes head side to side).

. . . .

Q. Okay. So when this was going on, you were lying there and you were not throwing punches and not swinging your elbow and not kicking; you were just lying there and these officers were instead doing all these things to you?

. . . .

A. Yes, I was just lying there.

Officer Fimbres testified that when Perez had pulled her hair and had her in a choke hold, he had caused her physical pain. With regard to his altercation with Officer Fimbres, Perez stated that he grabbed the officer, which may or may not have included her hair, and pulled her to him (his term for this being

5

"embrace") to prevent her from continuing to hit him, which would cover the "grabbing and pulling" language in the indictment; Officer Fimbres herself testified to the painful, and hence injurious, consequences of Perez's actions.[2] Therefore, we hold that this satisfies the "confession" requirement of the doctrine, entitling Perez to an "avoidance" defense based on his version of events.[3] We sustain Perez's first issue. Because our holding in the first issue is dispositive, we need not reach Perez's remaining two issues.[4] *See* Tex. R. App. P. 47.1.

---

[2]Officer Chaney also testified that he saw Perez put Officer Fimbres in a choke hold. Officer Brian Lord testified that he saw Perez grab Officer Fimbres by her hair.

[3]The State does not argue that Perez did not meet section 9.31's requirements, and if Perez's version of the events were to be believed, he did not resist before being met with greater force than necessary to make the arrest and attempting to protect himself by grabbing Officer Fimbres and pulling her to his chest. Officer Fimbres testified that she tased Perez two or three times. Officer Lord testified that he tased Perez four or five times before escalating to using his fist. Officer Fimbres and Officer Lord both testified that the situation was "a deadly force" situation. During cross-examination, Officer Fimbres denied that Perez had been tased twenty-six times but agreed that if he had been, it would have been excessive force. During the defense's case, Perez's mother testified that she counted twenty-six taser burns on her son's body; she had photographed the burns and Perez's other injuries, and photographs of Perez's wounds were admitted into evidence. Perez's father testified that the taser burns were all over Perez's body.

[4]Perez's remaining two issues are whether a lesser included offense instruction of resisting arrest should have been given and whether it was error to exclude the audio portion of a videotape of testimony of one of the witnesses.

6

## IV. Conclusion

Having sustained Perez's first issue, we reverse the trial court's judgment and remand this case for further proceedings in conformance with this opinion.

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

LIVINGSTON, C.J., filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 25, 2013